WILLAMETTE INDUSTRIES, INC. ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Willamette Industries, Inc. v. Commissioner
Docket Nos. 5083-76, 5096-76, 5097-76, 5098-76.
United States Tax Court
T.C. Memo 1980-577; 1980 Tax Ct. Memo LEXIS 6; 41 T.C.M. (CCH) 629; T.C.M. (RIA) 80577; December 30, 1980
*6 Taxpayers elected to treat the cutting of timber as a sale or exchange of a capital asset pursuant to sec. 631(a), I.R.C. 1954. Held: the fair market value of such timber as of January 1, 1971, January 1, 1972, October 1, 1972, and January 1, 1973, determined. Held, further: respondent's determination of the proper amount allocable to the cost of land with standing timber on it, for purposes of computing the taxpayers' depletion deduction under sec. 611, I.R.C. 1954, sustained. Charles P. Duffy and Philip N. Jones, for the petitioners. Gary R. DeFrang and Leo A. Reinikka, Jr., for the respondent. EKMAN
MEMORANDUM FINDINGS OF FACT AND OPINION EKMAN, Judge*: In these consolidated cases respondent determined the following deficiencies in Federal income taxes: Docket No.
Petitioner
Year
Deficiency
5083-76
Willamette Industries, Inc.
1971
$ 2,062,358
1972
2,596,771
1973
2,371,573
5096-76
Hunt Lumber Company, Inc.,
10/01/72
942
Transferor, Willamette
12/31/72
Industries, Inc., Transferee
5097-76 1a *7 Brooks-Willamette Corporation
1973
52,443
5098-76
Wilmar Plywood, Inc., Transferor,
1973
21,671
Willamette Industries, Inc.,
$'Transferee
The parties having made concessions, the issues remaining for decision are: 1) the fair market value for purposes of section 631(a), as of January 1, 1971, January 1, 1972, October 1, 1972, and January 1, 1973, of timber cut by the petitioners during their taxable years ended December 31, 1971, December 31, 1972, and December 31, 1973, and 2) the fair market value of land for purposes of computing petitioners' depletion deduction under section 611 for each of the taxable years in question. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts, the supplemental stipulations of facts and exhibits attached thereto are incorporated herein by this reference. Willamette Industries, Inc. (hereinafter Willamette or petitioner) is a corporation organized under the laws of the State of Oregon. At the time its petition was filed with this Court its principal office was located in Portland, Oregon. Petitioner filed its consolidated income tax returns for the calendar years 1971 through 1973 with the Internal Revenue Service Center in Ogden, Utah. [2] *8 Hunt Lumber Co., Inc. (hereinafter Hunt), was organized under the laws of the State of Louisiana on July 29, 1949. On December 31, 1974, Hunt, which was then a wholly owned subsidiary of petitioner, was dissolved and its assets transferred to petitioner. Petitioner is a transferee of Hunt within the meaning of section 6901. Wilmer Plywood, Inc. (hereinafter Wilmar) formerly Red River Plywood, Inc., was organized under the laws of the State of Oregon on September 8, 1971. On December 31, 1974, Wilmar, which *9 was then a wholly owned subsidiary of petitioner, was dissolved and its assets transferred to petitioner. Petitioner is a transferee of Wilmar within the meaning of section 6901. Beginning in 1959 and continuing through the years in question petitioner and Freres Lumber Co., Inc. were engaged as joint venturers under the name Freres Veneer Co. (hereinafter Freres). During the years in question Freres, Hunt, and petitioner were engaged in the manufacture and sale of timber products. For use in their business they cut timber which they either owned or had a contract right to cut for a period more than 6 months before the beginning of each such year. They computed their income for Federal tax purposes under the accrual method of accounting and for the years in question duly elected to treat the cutting of such timber under the provisions of section 631(a) for Federal income tax purposes. The timber in question was located in the southern United States, primarily in northern Louisiana (hereinafter South), and in Oregon. Inasmuch as material differences exist in the manner in which the parties have delineated those factors relevant to a determination of the fair market value of the *10 timber cut in Oregon and in the South, for purposes of clarity we bifurcate our discussion. SOUTH During the years in question the corporations located in the South cut timber eligible for section 631(a) treatment in the following respective amounts: 1971
Sawtimber
Pulpwood
Name
(MBF) [3]
cords
Pine
Hardwood
Pine
Hardwood
Louisiana Plywood Corp.
12,300
0
0
0
Santiam Southern Co.
12,236
632
0
0
Total
24,536
632
0
0
1972
Sawtimber
Pulpwood
Name
(MBF)
cords
Pine
Hardwood
Pine
Hardwood
Louisiana Plywood Corp.
10,236
0
0
0
Santiam Southern Co.
7,823
207
0
0
Total
18,059
207
0
0
Taxable Year 10/1/72 to 12/31/72
Sawtimber
Pulpwood
Name
(MBF)
cords
Pine
Hardwood
Pine
Hardwood
Hunt Lumber Co., Inc.
9,856
374
1,458
0
1973
Sawtimber
Pulpwood
Name
(MBF)
cords
Pine
Hardwood
Pine
Hardwood
Louisiana Plywood Corp.
11,996
18
0
0
Santiam Southern Co.
9,711
892
0
0
Hunt Lumber Co., Inc.
22,958
1,536
6,382
786
Wilmar Plywood, Inc.
7,232
0
0
0
Total
51,897
2,446
6,382
786
The sources of supply of the timber cut during the years at issue were United States Forest Service (USFS) sales, contracts with private suppliers including Continental Can Company, Inc. *11 and lands owned by the taxpayers. Sales of timber by the USFS in the South primarily involve selected timber on National Forest lands administered by the USFS. The timber sold consists of those trees within a given area which are selected and marked by the USFS. The USFS prepares a prospectus for each sale which contains in part an estimate of the volume of timber to be cut computed in thousand board feet (MBF) on the Scribner Decimal C scale. Interested purchasers then bid for the right to harvest the timber with the contract awarded to the highest bidder. The purchaser must then cut only those trees selected by the USFS. While the USFS uses the Scribner Decimal C scale to estimate the volume of timber to be sold, petitioner, the State of Louisiana and most members of the timber industry in the South use the Modified Doyle scale to estimate timber volume. The Scribner Decimal C scale results in a higher estimated volume for a given log than does the Modified Doyle scale. Timber cutting contracts with Continental Can Company, Inc. (hereinafter C.C.C.) were a major source of supply for the taxpayers during the years in question. Timber harvested under such contracts make up *12 a substantial portion of the timber to be valued herein. Most of the C.C.C. timber was cut on a clear cut basis in which all trees on a tract are cut. Clear cutting is ordinarily a less expensive method of cutting than selective cutting. Generally, the C.C.C. timber contained a larger volume of wood per acre than USFS timber. C.C.C. timber at issue herein was at least equal in value to the USFS timber sold in the South during the years in question. Petitioner and its related companies operate processing facilities at numerous locations including Ruston, La., Dodson, La., Minden, La., Campti, La., Zwolle, La., Columbia, La., and Danville, La. The timber processed in such facilities came from the general area surrounding the facilities. The geographic area of timber supply for a particular processing facility is dependent on such factors as the availability of timber in the area, competition for the purchase of timber, and the available means and cost of transporting the timber to the facility. The fair market values of the timber in question as of the applicable valuation dates as asserted by petitioner and respondent respectively are as follows: January 1, 1971
Pine Sawtimber
Hardwood Sawtimber
FMV per MBF
FMV per MBF
Company
Petitioners
Respondent
Petitioners
Respondent
Louisiana Plywood
Corp.
$ 93.44
$ 71.00
Santiam Southern
Company
90.16
71.00
$ 25.00
$ 25.00
January *13 1, 1972
Pine Sawtimber
Hardwood Sawtimber
FMV per MBF
FMV per MBF
Company
Petitioners
Respondent
Petitioners
Respondent
Louisiana Plywood
Corp.
$ 111.86
$ 82.00
Santiam Southern
Company
107.00
82.00
$ 25.00
$ 25.00
October 1, 1972
Pine Sawtimber
Hardwood Sawtimber
FMV per MBF
FMV per MBF
Company
Petitioners
Respondent
Petitioners
Respondent
Hunt Lumber Co.,
Inc.
$ 115.91
$ 100.00
$ 28.00
$ 30.00
Pulpwood
FMV per cord
Pine
Company
Petitioners
Respondent
Hunt Lumber Co.,
Inc.
$ 6.50
--- *
January 1, 1973
Pine Sawtimber
Hardwood Sawtimber
FMV per MBF
FMV per MBF
Company
Petitioners
Respondent
Petitioners
Respondent
Louisiana Plywood,
Corp.
$ 154.98
$ 110.00
$ 33.50
$ 33.50
Santiam Southern
Company
133.60
110.00
33.50
33.50
Wilmar Plywood
133.60
110.00
33.50
--- * *14 Hunt Lumber Co.
147.28
110.00
33.50
33.50
Willamette
132.00
110.00
33.50
33.50
Pulpwood
FMV per cord
Pine
Hardwood
Company
Pet.
Resp.
Pet.
Resp.
Louisiana Plywood,
Corp.
Santiam Southern
Company
Wilmar Plywood
Hunt Lumber Co.
$ 6.50
$ 6.50
$ 2.50
$ 2.50
Willamette
OREGON During the years in question petitioner and Freres cut Oregon timber eligible for section 631(a) treatment in the following respective amounts: Petitioner
Year
Board feet
1971
287,910,050
1972
215,630,030
1973
268,455,390
Freres
Year
Bord feet
1971
46,415,960
1972
59,348,300
1973
39,295,820
The timber was harvested from tracts located in the Cascade Range Mountains and the Coast Range Mountains of western Oregon.The principal sources of supply of the timber were sales of timber by the United States Forest Service (USFS), the Bureau of Land Management (BLM), private parties and governmental entities, and lands owned by petitioner. USFS Oregon timber to be valued herein is located in the northern part of the Siuslaw National Forest and in the North and South Santiam areas of the Willamette National Forest. USFS timber in Oregon is sold by auction to the high bidder with the total purchase price to be determined on a recovery basis. [4] The successful bidder, having bid a rate per MBF for each species of timber, must pay that rate for that timber which is actually harvested. USFS sale contracts usually require the purchaser of timber *15 to construct mainline roads in the area of the timber purchased. The purchaser receives a credit per MBF, at a rate specified in the contract, for the construction of such roads. The credit rate is based on USFS estimates computed from rates in prior years and not on actual road construction costs. The credit is applied to the required contract payments for the timber. The high bid per MBF for each species of timber at a USFS sale is the total amount bid and includes the road credit. The statistical high bid is the bid per MBF per species of timber less the road credit. The BLM, a division of the Department of the Interior, also sells timber on lands it administers. The BLM timber to be valued herein came in substantial part from lands located in the general proximity of tree farms owned and operated by petitioner. Prior to offering timber for sale, the BLM cruises the tract and prepares estimates as to timber volume, quality, and logging costs. The BLM provides this information to prospective purchasers who submit bids based on a rate per MBF *16 for each species of timber. The sale is awarded to the bidder who submits the highest total bid for all of the timber on the tract. The total amount paid for the timber is not adjusted to reflect the timber actually harvested. Purchasers of BLM timber are required to submit reports to the BLM of the harvest volume but not the grades of the logs harvested. Petitioner and all of the timber suppliers of petitioner use the Scribner Decimal C log scaling method to estimate the quantity of timber sold or harvested. However, the BLM uses a short log scale in computing estimated quantities of timber whereas petitioner and the timber suppliers use a long log scale. A number of differences exist between the short log and long log scales which combine to produce different estimated volume figures when the scales are applied to a given log. Generally, the short log scale produces a higher estimated volume than does the long log scale when applied to the same log. Petitioner and Freres also purchased a substantial volume of timber which was harvested from lands owned by the Avery and Holland interests (hereinafter Avery), and located in the North Santiam River drainage. Avery timber is managed *17 by a forestry consulting firm which also conducts sales of the timber. Prior to sale of the Avery timber the tract to be sold is cruised and the log volumes of particular species and of the grades of timber within each species are estimated. Sealed bids are solicited from prospective purchasers on either a rate per grade of each species or a rate per species of timber. The purchaser pays for the timber actually harvested.
Petitioners also purchased a substantial volume of timber from the City of McMinnville, Oregon, which was harvested from lands located near that city. This timber was managed and sold on behalf of the owner by the same consulting firm as was the Avery timber. During the years in question petitioner harvested timber from a tract of approximately 150,000 acres of land located east of Sweet Home, Oregon, in the South Santiam River drainage owned by the Hill interests (hereinafter Hill). A substantial portion of that timber was acquired pursuant to long-term cutting contracts originally entered into during 1946. The contract price paid for timber harvested pursuant to those contracts did not reflect the fair market value of the timber during the years in question.
Petitioner *18 also cut timber during the years in question which was purchased from other private parties. A substantial volume of timber purchased from Weyerhaeuser was harvested from lands located in the South Santiam River drainage. The principal tracts of Oregon timberland owned by petitioner from which timber was harvested during the years in question were identified by the parties as Black Rock, Carlton, Corvallis-Alsea, Mohawk, and Snow Peak. Black Rock, consisting of approximately 40,600 acres, is located a short distance west of Dallas, Oregon. Carlton, consisting of approximately 32,480 acres, is located north of Dallas, Oregon, near McMinnville, Oregon. Corvallis-Alsea is located southwest of Corvallis, Oregon, near Philomath, Oregon. Mohawk, consisting of approximately 32,400 acres is located northeast of Springfield, Oregon. Snow Peak, which includes lands identified as Thomas Creek, consists of approximately 55,900 acres and is located adjacent to the Avery timber east of Lebanon, Oregon. The fair market values of the timber cut by petitioner and Freres during 1971, 1972, and 1973 as of the applicable valuation dates, as asserted by petitioner and respondent respectively, are *19 as follows: 1971 FMV per MBF
FMV per MBF
Tract
Species
Petitioners
Respondent
Black Rock -
Douglas Fir & Pine
$ 101.60
$ 55.00
fee owned
Hemlock & Other
63.50
21.00
Cedar
35.00
37.00
Noble Fir
95.00
21.00
Special Cull
15.00
5.00
Utility
7.50
2.00
Black Rock -
Douglas Fir & Pine
70.90
24.00
Thinning
Hemlock & Other
48.30
13.00
Hardwood
12.00
8.00
Special Cull
10.00
5.00
Black Rock -
Douglas Fir & Pine
66.00
70.00
BLM - Govt.
Hemlock & Other
32.00
29.00
Cedar
50.00
44.00
Noble Fir
32.00
21.00
Special Cull
15.00
5.00
Utility
7.50
2.00
Carlton -
Douglas Fir & Pine
74.00
43.00
fee owned
Hemlock & Other
42.00
2.00
Cedar
19.00
11.00
Special Culls
15.00
5.00
Utility
7.50
2.00
Carlton -
Douglas Fir & Pine
48.00
65.00
BLM
Hemlock & Other
25.00
18.00
Cedar
33.00
31.00
Noble Fir
25.00
18.00
Special Cull
15.00
5.00
Utility
7.50
2.00
Hardwood
12.00
8.00
Carlton -
Douglas Fir & Pine
44.00
33.00
Coast Govt.
Hemlock & Other
24.00
21.00
Cedar
18.00
7.00
Utility
7.50
2.00
Corvallis -
Douglas Fir & Pine
104.50
54.00
fee owned
Hemlock & Other
60.60
20.00
Cedar
33.50
26.00
Noble Fir
90.00
20.00
Special Cull
15.00
5.00
Utility
7.50
2.00
Hardwood
10.00
8.00
Snow Peak -
Douglas Fir & Pine
$ 112.75
$ 70.00
fee owned
Hemlock & Other
67.00
50.00
Cedar
37.75
30.00
Noble Fir
99.00
50.00
Hardwood
12.00
8.00
Special Cull
15.00
5.00
Utility
7.50
2.00
Snow Peak -
Douglas Fir
1.00
20.00
thinning
Snow Peak -
Douglas Fir & Pine
72.00
35.00
BLM
Hemlock & Other
36.00
17.00
Cedar
35.00
17.00
Noble Fir
36.00
25.00
Hardwood
12.00
8.00
Special Cull
15.00
5.00
Utility
7.50
2.00
Thomas Creek -
Douglas Fir & Pine
95.00
60.00
fee owned
Hemlock & Other
63.00
40.00
Cedar
30.75
30.00
Noble Fir
98.00
40.00
Special Cull
15.00
5.00
Utility
7.50
2.00
Hardwood
12.00
8.00
Thomas Creek -
Douglas Fir & Pine
64.00
51.00
Govt.
Hemlock & Other
36.00
32.00
Cedar
35.00
32.00
Noble Fir
36.00
32.00
Hardwood
14.50
8.00
Utility
7.50
5.00
Special Cull
15.00
2.00
South Santiam -
Douglas Fir & Pine
95.00
55.00
Hill
Hemlock & Other
59.00
35.00
Cedar
27.25
20.00
Noble Fir
99.00
35.00
Special Cull
15.00
5.00
Utility
7.50
2.00
South Santiam -
Douglas Fir & Pine
59.00
28.00
BLM
Hemlock & Other
31.00
16.00
Cedar
30.00
16.00
Special Cull
15.00
5.00
Utility
7.50
2.00
South Santiam -
Douglas Fir & Pine
$ 96.00
$ 55.00
Weyerhaeuser
Hemlock & Other
58.00
35.00
Special Cull
15.00
5.00
Utility
7.50
2.00
Cedar
25.75
20.00
Noble Fir
63.75
35.00
South Santiam -
Douglas Fir & Pine
63.00
30.00
USFS
Hemlock & Other
31.00
12.00
Cedar
17.00
9.00
Noble Fir
31.00
20.00
Special Cull
15.00
5.00
Utility
7.50
2.00
Row River -
Douglas Fir & Pine
123.00
85.00
fee owned
Hemlock & Other
73.60
55.00
Cedar
42.50
35.00
Utility
7.50
5.00
Special Cull
15.00
2.00
Mohawk -
Douglas Fir & Pine
100.00
50.00
fee owned
Hemlock & Other
67.50
23.00
Cedar
33.75
17.00
Special Cull
15.00
5.00
Utility
7.50
2.00
Mohawk -
Douglas Fir & Pine
69.00
47.00
BLM
Hemlock & Other
38.00
23.00
Cedar
26.75
17.00
Special Cull
15.00
5.00
Utility
7.50
2.00
Springfield -
Douglas Fir & Pine
39.00
30.00
Govt.
Hemlock & Other
22.00
12.00
Cedar
24.00
10.00
Noble Fir
22.00
12.00
Special Cull
15.00
5.00
Utility
7.50
2.00
Freres Veneer
Douglas Fir & Pine
49.00
20.00
Co. - USFS
Hemlock & Other
19.00
2.00
Noble Fir
54.00
2.00
Cedar
10.00
2.00
Special Cull
15.00
5.00
Utility
7.50
2.00
Freres Veneer
Douglas Fir & Pine
$ 53.00
$ 44.00
Co. - BLM
Hemlock & Other
27.00
21.00
Hardwood
12.00
8.00
Special Cull
15.00
5.00
Utility
7.50
2.00
Freres Veneer
Douglas Fir & Pine
118.40
90.00
Co. - Avery
Hemlock & Other
72.00
45.00
Cedar
38.00
25.00
Special Cull
15.00
5.00
Utility
7.50
2.00
*20 1972
FMV per MBF
FMV per MBF
Tract
Species
Petitioners
Respondent
Black Rock -
Douglas Fir & Pine
117.00
78.00
fee owned
Hemlock & Other
75.00
35.00
Cedar
50.00
20.00
Noble Fir
90.00
35.00
Special Cull
25.00
5.00
Utility
12.50
2.00
Black Rock -
Douglas Fir & Pine
68.00
22.00
thinning
Hemlock & Other
45.70
19.00
Hardwood
20.00
8.00
Special Cull
25.00
5.00
Utility
12.50
2.00
Black Rock -
Douglas Fir & Pine
90.00
76.00
BLM
Hemlock & Other
48.50
47.00
Special Cull
25.00
5.00
Utility
12.50
2.00
Carlton -
Douglas Fir & Pine
92.00
60.00
fee owned
Hemlock & Other
59.00
25.00
Cedar
54.00
10.00
Special Cull
25.00
5.00
Utility
12.50
2.00
Hardwood
20.00
8.00
Carlton -
Douglas Fir & Pine
61.00
52.00
BLM
Hemlock & Other
64.00
42.00
Cedar
68.00
18.00
Noble Fir
64.00
42.00
Special Cull
25.00
5.00
Utility
12.50
2.00
Hardwood
12.50
8.00
Coast Govern.-
Douglas Fir & Pine
$ 61.00
$ 71.00
BLM
Hemlock & Other
38.00
29.00
Cedar
31.00
26.00
Utility
12.50
5.00
Hardwood
15.00
2.00
Coast Govern.-
Douglas Fir & Pine
60.25
49.00
USFS
Hemlock & Other
35.00
43.00
Cedar
10.00
8.00
Noble Fir
35.00
43.00
Hardwood
18.00
8.00
Utility
12.50
5.00
Special Cull
25.00
2.00
Corvallis -
Douglas Fir & Pine
95.00
53.00
fee owned
Hemlock & Other
57.00
15.00
Cedar
33.00
2.00
Special Cull
25.00
5.00
Utility
12.50
2.00
Snow Peak -
Douglas Fir & Pine
109.00
75.00
fee owned
Hemlock & Other
67.00
40.00
Cedar
53.40
25.00
Noble Fir
79.00
50.00
Hardwood
15.00
8.00
Special Cull
25.00
5.00
Utility
12.50
2.00
Snow Peak -
Douglas Fir
20.00
25.00
thinning
Snow Peak -
Douglas Fir & Pine
91.00
66.00
BLM
Hemlock & Other
38.00
35.00
Cedar
42.00
41.00
Noble Fir
49.00
35.00
Special Cull
25.00
5.00
Utility
12.50
2.00
Thomas Creek -
Douglas Fir & Pine
108.00
75.00
fee owned
Hemlock & Other
74.00
50.00
Cedar
56.60
35.00
Special Cull
25.00
5.00
Utility
12.50
2.00
Thomas Creek -
Douglas Fir & Pine
$ 103.00
$ 64.00
Govt.
Hemlock & Other
45.00
40.00
Cedar
47.50
47.00
Noble Fir
57.00
40.00
Hardwood
15.00
8.00
$12Utility.50
5.00
Special Cull
25.00
2.00
Thomas Creek -
Douglas Fir & Pine
114.00
78.00
Holland
Hemlock & Other
72.00
45.00
Cedar
55.00
30.00
Special Cull
25.00
5.00
Utility
12.50
2.00
South Santiam -
Douglas Fir & Pine
103.00
72.00
Hill
Hemlock & Other
64.00
45.00
Cedar
53.60
30.00
Noble Fir
78.50
45.00
Special Cull
25.00
5.00
Utility
12.50
2.00
South Santiam -
Douglas Fir & Pine
109.00
39.00
BLM
Hemlock & Other
38.00
27.00
Cedar
44.00
23.00
Special Cull
25.00
27.00
Utility
12.50
5.00
Noble Fir
37.50
2.00
South Santiam -
Douglas Fir & Pine
100.00
70.00
fee owned
Hemlock & Other
60.00
45.00
Cedar
51.00
30.00
Noble Fir
78.00
45.00
Special Cull
25.00
5.00
Utility
12.50
2.00
South Santiam -
Douglas Fir & Pine
76.00
64.00
USFS
Hemlock & Other
54.00
41.00
Cedar
24.00
16.00
Noble Fir
69.00
41.00
Special Cull
25.00
5.00
Utility
12.50
2.00
Row River -
Douglas Fir & Pine
130.00
110.00
fee owned
Hemlock & Other
84.00
80.00
Cedar
73.50
50.00
Utility
12.50
5.00
Special Cull
25.00
2.00
Mohawk -
Douglas Fir & Pine
$ 101.00
$ 52.00
fee owned
Hemlock & Other
64.00
17.00
Cedar
48.00
2.00
Noble Fir
64.00
17.00
Special Cull
25.00
5.00
Utility
12.50
2.00
Mohawk -
Douglas Fir & Pine
96.00
71.00
BLM
Hemlock & Other
58.00
40.00
Cedar
27.00
21.00
Special Cull
25.00
5.00
Utility
12.50
2.00
Springfield -
Douglas Fir & Pine
65.50
42.00
USFS
Hemlock & Other
34.00
5.00
Cedar
5.00
5.00
Noble Fir
50.00
5.00
Special Cull
25.00
5.00
Utility
12.50
2.00
Freres Veneer
Douglas Fir & Pine
75.75
70.00
Co. - USFS
Hemlock & Other
45.15
29.00
Noble Fir
50.00
29.00
Cedar
7.00
14.00
Special Cull
25.00
5.00
Utility
12.50
2.00
Freres Veneer
Douglas Fir & Pine
92.00
47.00
Co.-BLM
Hemlock & Other
44.00
26.00
Noble Fir
44.00
26.00
Cedar
44.00
32.00
Special Cull
25.00
5.00
Utility
12.50
2.00
Hardwood
15.00
8.00
Freres Veneer
Douglas Fir & Pine
130.00
90.00
Co.-Avery
Hemlock
87.00
55.00
Cedar
53.60
25.00
Special Cull
25.00
5.00
Utility
12.50
2.00
Freres Veneer
Douglas Fir
60.00
47.00
Co.-State
Hemlock & Other
41.00
26.00
Hardwood
18.00
8.00
Special Cull
25.00
5.00
Utility
12.50
2.00
*21 1973
FMV per MBF
FMV per MBF
Tract
Species
Petitioners
Respondent
Black Rock -
Douglas Fir
$ 194.00
$ 100.00
fee owned
Hemlock & Other
182.00
39.00
Cedar
100.00
77.00
Hardwood
25.00
8.00
Special Cull
25.00
5.00
Utility
10.00
2.00
Black Rock -
Douglas Fir
117.00
49.00
thinning
Hemlock & Other
139.00
19.00
Cedar
100.00
19.00
Hardwood
25.00
5.00
Utility
10.00
2.00
Black Rock -
Douglas Fir
138.00
114.00
BLM
Hemlock & Other
73.00
60.00
Cedar
61.00
60.00
Special Cull
25.00
5.00
Utility
10.00
2.00
Carlton -
Douglas Fir
161.00
130.00
fee owned
Hemlock & Other
182.00
60.00
Cedar
109.00
50.00
Special Cull
25.00
5.00
Utility
10.00
2.00
Carlton -
Douglas Fir
142.00
109.00
BLM
Hemlock & Other
80.00
57.00
Cedar
86.00
73.00
Hardwood
25.00
8.00
Special Cull
25.00
5.00
Utility
10.00
2.00
Carlton -
Douglas Fir
140.00
86.00
thinning
Hemlock & Other
148.00
46.00
Cedar
101.00
61.00
Hardwood
25.00
8.00
Special Cull
25.00
5.00
Utility
10.00
2.00
Coast Govern.-
Douglas Fir
128.50
90.00
USFS
Hemlock & Other
107.50
71.00
Cedar
41.70
35.00
Hardwood
25.00
8.00
Special Cull
25.00
5.00
Utility
10.00
2.00
Corvallis -
Douglas Fir
$ 200.00
$ 130.00
fee owned
Hemlock & Other
172.00
50.00
Cedar
117.00
68.00
Hardwood
25.00
8.00
Special Cull
25.00
5.00
Utility
10.00
2.00
Snow Peak -
Douglas Fir
235.00
120.00
fee owned
Hemlock & Other
179.00
70.00
Cedar
127.80
35.00
Special Cull
25.00
5.00
Utility
10.00
2.00
Snow Peak -
Douglas Fir
93.60
54.00
thinning
Snow Peak -
Douglas Fir
125.00
106.00
BLM
Hemlock & Other
66.00
52.00
Cedar
78.00
58.00
Hardwood
25.00
8.00
Special Cull
25.00
5.00
Utility
10.00
2.00
Snow Peak -
Douglas Fir
204.00
111.00
Holland
Hemlock & Other
183.00
53.00
Hardwood
25.00
8.00
Special Cull
25.00
5.00
Utility
10.00
2.00
Thomas Creek -
Douglas Fir
194.00
112.00
fee owned
Hemlock & Other
175.00
80.00
Cedar
116.00
40.00
Hardwood
25.00
8.00
Special Cull
25.00
5.00
Utility
10.00
2.00
Thomas Creek -
Douglas Fir
127.00
108.00
BLM
Hemlock & Other
70.00
59.00
Cedar
87.00
65.00
Hardwood
25.00
8.00
Special Cull
25.00
5.00
Utility
10.00
2.00
South Santiam -
Douglas Fir
200.00
110.00
Hill
Hemlock & Other
181.00
75.00
Cedar
113.50
35.00
Special Cull
25.00
5.00
Utility
10.00
2.00
South Santiam -
Douglas Fir
$ 124.50
$ 120.00
BLM
Hemlock & Other
64.00
61.00
Cedar
81.00
67.00
Special Cull
25.00
5.00
Utility
10.00
2.00
South Santiam -
Douglas Fir
165.00
105.00
fee owned
Hemlock & Other
170.00
75.00
Cedar
110.00
35.00
Special Cull
25.00
5.00
Utility
10.00
2.00
South Santiam -
Douglas Fir
144.25
120.00
USFS
Hemlock & Other
106.70
94.00
Cedar
38.70
4.00
Hardwood
25.00
8.0
Special Cull
25.00
5.00
Utility
10.00
2.00
Mohawk -
Douglas Fir
169.00
79.00
fee owned
Hemlock & Other
163.00
72.00
Cedar
136.50
45.00
Special Cull
25.00
5.00
Utility
10.00
2.00
Mohawk - BLM
Douglas Fir
144.00
109.00
Hemlock & Other
75.00
99.00
Cedar
55.00
71.00
Special Cull
25.00
5.00
Utility
10.00
2.00
Mohawk -
Douglas Fir
121.00
60.00
thinning
Hemlock & Other
90.00
60.00
Springfield -
Douglas Fir
143.00
127.00
BLM
Hemlock & Other
83.00
66.00
Cedar
83.00
67.00
Hardwood
25.00
8.00
Special Cull
25.00
5.00
Utility
10.00
2.00
Springfield -
Douglas Fir
116.00
110.00
USFS
Hemlock & Other
68.85
28.00
Cedar
13.55
32.00
Special Cull
19.00
5.00
Utility
7.00
2.00
Freres Veneer
Douglas Fir & Pine
$ 153.00
$ 76.00
Co.-USFS
Hemlock & Other
113.20
75.00
Cedar
46.00
2.00
Special Cull
25.00
5.00
Utility
10.00
2.00
Freres Veneer
Douglas Fir & Pine
116.00
126.00
Co.-BLM
Hemlock & Other
64.00
64.00
Special Cull
25.00
5.00
Utility
10.00
2.00
Freres Veneer
Douglas Fir & Pine
267.00
250.00
Co.-Avery
Hemlock & Other
213.00
200.00
Cedar
138.70
120.00
Special Cull
25.00
5.00
Utility
10.00
2.00
Freres Veneer
Douglas Fir & Pine
142.00
126.00
Co.-State
Hemlock & Other
113.00
64.00
Hardwood
25.00
8.00
Special Cull
25.00
5.00
Utility
10.00
2.00
Molalla -
Douglas Fir
210.00
125.00
fee owned
Hemlock & Other
186.00
85.00
Cedar
120.50
40.00
Special Cull
25.00
5.00
Utility
10.00
2.00
City of
Douglas Fir
172.00
168.00
McMinnville
Hemlock & Other
164.00
44.00
Cedar
109.00
23.00
Hardwood
25.00
8.00
Special Cull
25.00
5.00
Utility
10.00
2.00
*22 OPINION Section 631(a)[5] *23 provides that a taxpayer may elect to treat the cutting of certain timber as a sale or exchange of a capital asset. Capital gain or loss is recognized by the taxpayer in an amount equal to the fair market value of the timber as of the first day of the taxable year in which the timber is cut less the taxpayer's adjusted basis for depletion of the timber. At issue herein is the fair market value of the timber eligible for section 631(a) treatment cut by the taxpayers as of January 1, 1971, January 1, 1972, October 1, 1972, and January 1, 1973. In making the determination of the fair market value of timber eligible for section 631(a) treatment, the normal standard is the hypothetical price at which the timber would be sold in a transaction between a willing seller and a willing buyer both of whom have the most reliable and accurate information available on the valuation date. Section 1.631-1(d)(2), Income Tax Regs.Buse v. Commissioner,71 T.C. 1129 (1979). Among the factors which deserve due consideration in reaching a determination of the fair market value of timber on a given date are the character, quality, quantity, and location of the timber, as well as its accessibility. Disinterested appraisals of its value are also valid considerations. See section 1.611-3(f), Income Tax Regs.
The best indicia *24 of the fair market value of timber for section 631(a) purposes are contemporaneous sales of comparable timber. The choice of comparable sales requires specific knowledge of the timber to be valued and the timber actually sold. While a precise method of choosing comparable sales is incapable of universal application, certain factors affecting the price a willing buyer would pay a willing seller should always be considered. The geographical market area from which comparable sales may be chosen must be delineated. Ideally the comparable sale will be from a tract in close geographic proximity to the timber to be valued and within the feasible area of supply of the processing facility to which the section 631(a) timber is shipped. The quantity of the timber sold must be reasonably comparable with the subject timber. The method by which the comparable timber is sold must also be considered and the contractual terms of the sale analyzed. The topography of the tract and path of transport must be reviewed.
While sales on the valuation date would preclude the necessity for consideration of changes in the market place, a large sample of comparable sales is needed to insure a valid indication *25 of the fair market value of the timber. Consequently the time period from which comparables are chosen should be expanded to include sales occurring before and after the valuation date. No set time period from which comparable sales may be taken is universally applicable inasmuch as the objective is to obtain a sufficiently large sample of comparable sales to insure against distortion. Once the comparable sales are selected, each sale must be individually adjusted to reflect equivalent quality, quantity, accessibility, and location. Buse v. Commissioner,supra at 1129.Economic trends in the sale price of timber must be considered and adjustments made for such trends. SOUTH We have been assisted in our determination of the fair market value of the southern timber by the opinions of three experts, two for petitioner and one for respondent. In addition, the individual in charge of acquiring timber for petitioner and managing petitioner's southern timber during the years in question provided valuable testimony. We find varying degrees of weakness in the methods of analysis used by the witnesses and conclude that none of their opinions is alone dispositive of the valuation issue. A *26 few comments concerning the valuation methods are illustrative. The experts differed as to the proper method of converting estimated volumes of USFS timber computed by the use of the Scribner Decimal C scale to equivalent volumes using the Modified Doyle scale. The USFS timber volume was estimated at the time the timber was offered for sale. Petitioner presented evidence of the harvested volume of USFS timber computed under the Modified Doyle scale. Inasmuch as the timber grew during the period between the sale and harvest, an adjustment for growth was obviously necessary to compute accurately the differences in the scales. Respondent's expert erred in failing to make a proper adjustment for such growth. The parties also disagreed concerning the proper method of valuing the C.C.C. timber. USFS timber is often of a higher quality than private timber sold in the South. Respondent's expert maintained that inasmuch as the C.C.C. timber was purchased from a private party, only sales of private timber provided suitable comparables for computing the proper weighted average to use in valuing the timber. However, we find that the C.C.C. timber was at least equal in value to the USFS *27 timber. Clearly, absent factors such as differences in the method of sale, it is the character of the timber to be valued, not the identity of the seller, which determines appropriate comparable sales of timber. Some of the tracts of timber used as comparable sales by respondent's expert were small tracts which clearly are not comparable with the tracts of timber to be valued. Certain sales of USFS timber were conducted to promote small business by excluding certain potential purchasers. Such sales are not proper comparables and should not have been used by respondent's expert. One of the petitioner's experts considered private sales information obtained by interviewing individuals who attended the sales. Such unverifiable information is of little assistance to us in determining the value of the timber in question. We find the opinion of the individual who was in charge of petitioner's southern timber during the years in question of particular assistance. He clearly possessed the requisite familiarity with the character of the harvested timber to select comparable sales. Moreover, he was directly involved in petitioner's acquisition of timber during the years in question and exhibited *28 a comprehensive knowledge of the timber market. However, we recognize that he is not a totally disinterested witness in fixing the fair market value of petitioner's timber eligible for section 631(a) treatment. In summary, based on the evidence presented, considering the above noted factors and exercising our own independent judgment, we conclude that the fair market value of the southern timber eligible for section 631 (a) treatment was as follows: January 1, 1971
Sawtimber
Sawtimber
FMV per MBF
FMV per MBF
Company
Pine
Hardwood
Louisiana Plywood
Corp.
$ 81.00
Santiam Southern
Company
79.50
$ 25.00
January 1, 1972
Sawtimber
Sawtimber
FMV per MBF
FMV per MBF
Company
Pine
Hardwood
Louisiana Plywood
Corp.
$ 104.00
Santiam Southern
Company
102.00
$ 25.00
October 1, 1972
Sawtimber
Sawtimber
Pulpwood
FMV per MBF
FMV per MBF
cords
Company
Pine
Hardwood
Pine
Hardwood
Hunt Lumber Co.,
Inc.
$ 115.91
$ 29.00
$ 6.50
January 1, 1973
Sawtimber
Sawtimber
Pulpwood
FMV per MBF
FMV per MBF
cords
Company
Pine
Hardwood
Pine
Hardwood
Louisiana Plywood
Corp.
$ 129.00
$ 33.50
Santiam Southern
Company
130.00
33.50
Wilmar Plywood
129.00
33.50
Hunt Lumber Co.
129.00
33.50
$ 6.50
$ 2.50
Willamette
129.00
33.50
OREGON
Four expert witnesses, two for each of the parties, testified *29 concerning the fair market value of the Oregon timber on the respective valuation dates. In addition, the individual in charge of appraising all timber acquired and harvested by petitioner during the years in question testified concerning the timber to be valued. While the testimony of these witnesses was extremely helpful in making our determination, we find none of their opinions determinative as to the fair market value of the timber in question. Some particular areas of weakness in the experts' methodology are evident and deserve comment. There was sharp disagreement between the parties concerning the proper period from which to obtain comparable sales. One of petitioner's experts felt that due to the cyclical nature of the timber industry the proper period was from 6 months before to 6 months after the valuation date. One of respondent's experts felt that due to sharply rising prices in the market place and the large number of comparable sales occurring during the second quarter of the years in question the proper period was from 3 months before to 3 months after the valuation date. We feel that to some extent both individuals miss the point. We are not seeking to obtain *30 an average value which reflects the cyclical nature of the timber industry. Nor do we feel constrained, because of a rising market, to exclude comparable sales occurring 3 months and one day after the valuation date. Rather, we seek a sufficient number of comparable sales to reflect accurately the fair market value of the timber on the valuation date. See Martin Timber Co., Inc. v. Commissioner,T.C. Memo 1972-255. If a rising or falling market serves to distort the price of a comparable sale, the individual sale should be adjusted. Sales of the Avery timber gave rise to marked differences in the experts' opinions as to the fair market value of a portion of that timber which was purchased from private parties. The Avery timber was marketed in an unusual manner in that it was sold on a sealed bid recovery basis with purchasers bidding a price for grades within a species of timber. In addition, the timber was of extremely high quality. One of respondent's experts felt the fairly uncommon marketing method precluded the use of sales of Avery timber as comparable sales for any timber other than Avery timber, while one of petitioner's experts felt the Avery timber was the best available *31 evidence of comparable sales. We feel that both experts erred. Sales of Avery timber are valid comparable sales but the prices obtained must be adjusted to reflect the unusual method of sale. One of respondent's experts utilized a conversion return method of analysis utilizing the selling prices of logs to value the timber in question. We agree with petitioner that the comparable sales method of calculating value is a better method than the conversion return. See Buse v. Commissioner,supra at 1136-1137, Ellingson Timber Co. v. Commissioner,T.C. Memo 1977-197. Respondent correctly argues that the conversion return method is a useful means of checking value determined using the comparable sales approach. However, we afford little weight to an opinion based entirely on a conversion return approach, even as a check on the opinions of other experts. One of respondent's experts acknowledged that timber which could be exported during the years in question was more valuable than timber which was subject to governmental prohibitions against export. However, he then calculated that portion of the export market share which petitioner could capture based on the ratio of the exportable *32 timber harvested by petitioner to the total exportable timber harvested in the area during the years in question. The practical effect of the expert's calculation was to reduce to a minimum the quantity of timber which was valued by the use of comparable sales of export timber. We think the value of exportable timber should clearly reflect the higher price obtainable for export timber within the framework of the comparable sales method. Buse v. Commissioner,supra at 1137. Experts for the parties agreed that an adjustment was necessary to compare sales of BLM timber with volumes estimated using the short log scale with timber harvested from BLM lands by petitioner with volumes estimated using the long log scale. Respondent's expert maintained that the proper adjustment was to increase the bid rate of BLM sales by 10 percent. Petitioner's expert felt the proper adjustment was an increase of 18 percent. The clear preponderance of the evidence presented in this case supports the 18 percent adjustment utilized by petitioner's expert. The parties expended a great deal of time and effort deriding the respective opinions of their opponent's experts. Respondent argued that one of petitioner's *33 experts distorted the cost of comparable sales of USFS timber by failing to make an adjustment for road credits. While we agree that an adjustment for road credits is necessary, we find the method of adjustment used by petitioner's expert to be as effective as that used by respondent's expert. Petitioner argued that one of respondent's experts evidenced a certain bias in valuing the timber acquired from the Hill interests. We are not persuaded that such criticism is justified by the record. We find the experts have done an admirable job of estimating the value of an enormous quantity of timber. We do not feel that any shortcomings in the presentation of this case are those of the respective experts. This Court has repeatedly stated that issues of valuation are more satisfactorily resolved by the parties themselves than by the Court, and has urged the parties to seek to dispose of such issues without litigation. This case, is a prime example of the type of situation to which the Court has referred, [6] *34 and the posture of the parties herein is aptly described by the Court in Buffalo Tool and Die Manufacturing Co., Inc. v. Commissioner,74 T.C. 441, 451-452 (1980): The existing record reeks of stubbornness rather than flexibility on the part of both parties, based upon "an overzealous effort * * * to infuse a talismanic precision" into their respective views as to valuation. See Messing v. Commissioner, 48 T.C. at 512. We are convinced that the valuation issue is capable of resolution by the parties themselves through an agreement which will reflect a compromise Solomon-like adjustment, thereby saving the expenditure of time, effort, and money by the parties and the Court -- a process not likely to produce a better result. Indeed, each of the parties should keep in mind that, in the final analysis, the Court may find the evidence of valuation by one of the parties sufficiently more convincing than that of the other party, so that the final result will produce a significant financial defeat for one or the other, rather than a middle-of-the-road compromise which we suspect each of the parties expects the Court to reach. * * * We are unable, as were the experts, to bring "talismanic precision" to the valuation of the timber *35 eligible for section 631(a) treatment. We have carefully considered the testimony presented, resolved the differences in methodology of the experts over which the parties were at loggerheads and ultimately exercised our own judgment in determining the fair market value of the timber on the respective valuation dates. We conclude that the fair market value on the respective dates of the Oregon timber eligible for section 631(a) treatment was as follows: VALUES - 1971 FAIR MARKET VALUE PER THOUSAND FEET
DOUGLAS FIR
HEMLOCK AND
TRACT
& PINE
OTHER
CEDAR
NOBLE FIR
Black Rock - fee owned
$ 90.00
$ 60.00
$ 33.00
$ 89.00
- thinning
60.00
40.00
- BLM - Govt.
66.00
31.00
48.00
29.00
Carlton - fee owned
70.00
40.00
17.00
- BLM
43.00
22.00
32.00
23.00
- Coast Govt.
43.00
23.50
16.00
Corvallis - fee owned
100.00
55.00
33.00
80.00
Snow Peak - fee owned
105.00
65.00
35.00
90.00
- Thinning
20.00
- BLM
45.00
33.00
32.00
33.50
Thomas Creek - fee owned
90.00
60.00
30.50
90.00
Govt.
60.00
34.00
34.00
34.00
South Santiam - Hill
90.00
57.00
26.00
90.00
- BLM
58.00
23.00
26.00
- Weyerhaeuser
90.00
55.00
24.00
60.00
- U.S.F.S.
45.00
18.50
10.00
30.00
Row River - fee owned
115.00
70.00
40.00
Mchawk - fee owned
90.00
65.00
30.00
- BLM
50.00
30.00
25.00
Springfield - Govt.
37.00
20.00
22.00
20.00
Freres Veneer - U.S.F.S.
45.00
17.00
8.00
50.00
Co. - BLM
50.00
25.00
- Avery
115.00
65.00
35.00
*36 TRACT
SPECIAL CULLS
UTILITY
HARDWOOD
Black Rock - fee owned
$ 10.00
$ 5.00
- thinning
8.00
$ 10.00
- BLM - Govt.
7.00
4.00
Carlton - fee owned
12.00
5.00
- BLM
12.00
6.00
11.00
- Coast Govt.
5.00
Corvallis - fee owned
10.00
7.00
10.00
Snow Peak - fee owned
12.00
6.00
11.00
- Thinning
- BLM
12.00
6.00
11.00
Thomas Creek - fee owned
12.00
6.00
11.00
- Govt.
12.00
6.00
12.00
South Santiam - Hill
12.00
6.00
- BLM
10.00
4.00
- Weyerhaeuser
12.00
6.00
- U.S.F.S.
12.00
6.00
Row River - fee owned
12.00
6.00
Mchawk - fee owned
12.00
6.00
- BLM
12.00
6.00
Springfield - Govt.
12.00
6.00
Freres Veneer - U.S.F.S.
12.00
6.00
Co. - BLM
12.00
6.00
11.00
- Avery
12.00
6.00
VALUES - 1972 FAIR MARKET VALUE PER THOUSAND FEET
DOUGLAS FIR
HEMLOCK AND
TRACT
& PINE
OTHER
CEDAR
NOBLE FIR
Black Rock - fee owned
$ 110.00
$ 65.00
$ 45.00
$ 70.00
- thinning
65.00
40.00
- BLM
80.00
48.00
Carlton - fee owned
85.00
55.00
40.00
- BLM
56.00
50.00
33.50
50.00
Coast Govt. - BLM
61.00
33.75
27.00
- U.S.F.S.
58.00
38.00
9.00
40.00
Corvallis - fee owned
67.50
42.00
30.00
Snow Peak - fee owned
96.70
60.00
50.00
75.00
- thinning
23.00
- BLM
85.00
37.00
42.00
47.00
Thomas Creek - fee owned
95.00
65.00
50.00
- Govt.
100.00
43.00
47.50
55.00
- Holland
105.00
65.00
53.00
South Santiam - Hill
95.00
60.00
50.00
75.00
- BLM
100.00
35.00
40.00
20.00
- fee owned
90.00
55.00
46.00
70.00
- U.S.F.S.
72.00
50.00
22.00
65.00
Row River - fee owned
125.00
84.00
70.00
Mohawk - fee owned
90.00
55.00
40.00
55.00
- BLM
93.00
55.00
25.00
Springfield - U.S.F.S.
60.00
30.00
5.00
40.00
Freres Veneer - U.S.F.S.
75.00
43.00
10.00
40.00
Co. - BLM
85.00
40.00
40.00
40.00
- Avery
125.00
80.00
50.00
- State
55.00
37.00
*37 TRACT
SPECIAL CULLS
UTILITY
HARDWOOD
Black Rock - fee owned
$ 22.00
$ 10.00
$
- thinning
20.00
10.00
15.00
- BLM
22.00
10.00
Carlton - fee owned
22.00
10.00
15.00
- BLM
15.00
10.00
10.00
Coast Govt. - BLM
10.00
12.00
- U.S.F.S.
20.00
10.00
15.00
Corvallis - fee owned
20.00
10.00
Snow Peak - fee owned
15.00
10.00
12.00
- thinning
- BLM
20.00
10.00
Thomas Creek - fee owned
20.00
10.00
- Govt.
20.00
10.00
12.00
- Holland
20.00
10.00
South Santiam - Hill
20.00
10.00
- BLM
26.00
10.00
- fee owned
20.00
10.00
- U.S.F.S.
20.00
10.00
Row River - fee owned
20.00
10.00
Mohawk - fee owned
20.00
10.00
- BLM
20.00
10.00
Springfield - U.S.F.S.
20.00
10.00
Freres Veneer - U.S.F.S.
20.00
10.00
Co. - BLM
20.00
10.00
12.00
- Avery
20.00
10.00
- State
20.00
10.00
15.00
VALUES - 1973 FAIR MARKET VALUE PER THOUSAND FEET
DOUGLAS FIR
HEMLOCK AND
TRACT
& PINE
OTHER
CEDAR
NOBLE FIR
Black Rock - fee owned
$ 170.00
$ 16.00
$ 90.00
- thinning
90.00
100.00
80.00
- BLM
125.00
70.00
61.00
Carlton - fee owned
150.00
150.00
95.00
- BLM
130.00
70.00
80.00
- thinning
130.00
130.00
90.00
Coast Govt. - U.S.F.S.
105.00
100.00
40.00
Corvallis - fee owned
180.00
165.00
100.00
Snow Peak - fee owned
200.00
150.00
120.00
- thinning
85.00
- BLM
120.00
60.00
73.00
- Holland
190.00
170.00
Thomas Creek - fee owned
180.00
165.00
110.00
- BLM
123.00
65.00
80.00
South Santiam - Hill
180.00
170.00
100.00
- BLM
122.00
63.00
80.00
- fee owned
150.00
150.00
90.00
- U.S.F.S.
130.00
100.00
35.00
Mohawk - fee owned
150.00
150.00
130.00
- BLM
135.00
80.00
60.00
- thinning
115.00
80.00
Springfield - BLM
140.00
80.00
80.00
- U.S.F.S.
115.00
60.00
20.00
Freres Veneer - U.S.F.S.
145.00
100.00
35.00
Co. - BLM
120.00
64.00
- Avery
260.00
210.00
130.00
- State
140.00
110.00
Molalla - fee owned
200.00
170.00
100.00
City of
McMinnville -
170.00
160.00
100.00
*38 TRACT
SPECIAL CULLS
UTILITY
HARDWOOD
Black Rock - fee owned
$ 21.00
$ 8.00
$ 23.00
- thinning
8.00
20.00
- BLM
20.00
8.00
Carlton - fee owned
22.00
8.00
- BLM
20.00
8.00
20.00
- thinning
20.00
8.00
20.00
Coast Govt. - U.S.F.S.
20.00
8.00
20.00
Corvallis - fee owned
20.00
8.00
20.00
Snow Peak - fee owned
20.00
8.00
- thinning
- BLM
20.00
8.00
20.00
- Holland
20.00
8.00
20.00
Thomas Creek - fee owned
20.00
8.00
20.00
- BLM
20.00
8.00
20.00
South Santiam - Hill
20.00
8.00
- BLM
20.00
8.00
- fee owned
20.00
8.00
- U.S.F.S.
20.00
8.00
20.00
Mohawk - fee owned
20.00
8.00
- BLM
20.00
8.00
- thinning
Springfield - BLM
20.00
8.00
20.00
- U.S.F.S.
15.00
5.00
Freres Veneer - U.S.F.S.
20.00
8.00
Co. - BLM
20.00
8.00
- Avery
20.00
8.00
- State
20.00
8.00
20.00
Molalla - fee owned
20.00
8.00
City of
McMinnville -
20.00
8.00
20.00
The remaining issue before the Court concerns the proper amount allocable to the cost of land with standing timber on it acquired during the years in question for purposes of computing petitioner's allowable depletion deduction under section 611. Section 611[7] provides that a reasonable allowance for depletion of timber shall be allowed as a deduction pursuant to regulations promulgated by the Secretary. The starting point for purposes of computing the depletion deduction *39 is the determination of the adjusted basis of the timber for depletion. See section 612. Timber's adjusted basis for depletion is the cost or other basis determined under section 1012 (relating to the basis of property), adjusted as provided in section 1016 (relating to adjustments to basis), and the regulations under such sections. Section 1.612-1(a), Income Tax Regs. The adjusted basis of timber does not include the cost or value of land on which the timber is located. Section 1.612-1(b)(1)(ii), Income Tax Regs. During each of the years in question, the petitioner purchased tracts of timberland in Oregon and in the South. Pursuant to section 1.611-3, Income Tax Regs., petitioner filed a Form T-Timber and made an allocation of each purchase price among *40 the land, the merchantable timber, and the young unmerchantable timber located on each tract of timberland. In the notice of deficiency, respondent determined that, due to an understatement of the amount of the purchase price attributable to land and an overstatement of the amount attributable to timber, excessive depletion deductions were claimed by petitioner. Specifically, respondent disallowed $ 50,000 of the claimed depletion deductions for each of the years in question. Petitioner contends that respondent's determination is erroneous and wholly speculative, and in support of its contention points to respondent's disallowance of precisely $ 50,000 of the claimed depletion deduction for each of the years in question. Petitioner argues further that such a speculative basis is insufficient to sustain the presumption of correctness ordinarily afforded to respondent's determination under Welch v. Helvering,290 U.S. 111 (1933), and Rule 142(a), Tax Court Rules of Practice and Procedure. Petitioner relies on Weimerskirch v. Commissioner,596 F.2d 358 (9th Cir. 1979) revg. 67 T.C. 672 (1977), and United States v. Janis,428 U.S. 433 (1976). In the alternative, petitioner argues *41 that if the burden of proving the amount properly allocable to the land in question rests on petitioner, it has met its burden of proof. Regarding petitioner's initial argument we think petitioner's reliance on Weimerskirch v. Commissioner,supra, and United States v. Janis,supra, is misplaced. In Janis the Los Angeles police department seized certain gambling records of the taxpayers and informed an agent of the Internal Revenue Service that the taxpayer had been arrested for bookmaking. The agent analyzed the seized records, which analysis formed the sole basis for an assessment against the taxpayer. See United States v. Janis,supra at 437-438. The issue in Janis was whether evidence seized by a state criminal law enforcement officer in good faith, but nonetheless unconstitutionally, is admissible in a civil proceeding by or against the United States. United States v. Janis,supra at 435. The Supreme Court held that the exclusionary rule, [based on the individual's Fourth Amendment right to be free from unreasonable searches and seizures] should not be extended to forbid the use, in the civil proceeding of one sovereign, of evidence seized by a criminal law enforcement agent *42 of another sovereign. United States v. Janis,supra at 461. Petitioner bases its argument on dictum in Janis to the effect that a determination of tax due without rational foundation and excessive may be one not properly subject to the usual rule concerning the burden of proof in tax cases. Weimerskirch v. Commissioner,[8] which was decided by this Court prior to the Supreme Court decision in Janis, involved a deficiency based on alleged heroin sales. The revenue agent therein based his calculation of unreported income in part on the statement of two confidential informers. After reviewing the factual basis for the agent's determination in camera, but without disclosing the information to the taxpayer, the trial judge ruled that respondent's determination was not arbitrary and unreasonable. Relying heavily on the Supreme Court's dictum in Janis, the Ninth Circuit, to which an appeal of this case will lie, reversed our decision in Weimerskirch.The Ninth Circuit held: "A deficiency determination which is not supported by the proper foundation of substantive evidence is clearly arbitrary and erroneous." Weimerskirch v. Commissioner,596 F.2d at 362. *43 It is not necessary herein that we attempt to deal with such a broadly stated rule. See Jackson v. Commissioner,73 T.C. 394, 404 (1979). Weimerskirch is inapposite to the instant case. [9] The issue in Weimerskirch concerned unreported income. At issue herein is respondent's disallowance of a portion of the depletion deduction claimed by petitioner. See Rockwell v. Commissioner,512 F.2d 882 (9th Cir. 1975), affg. a Memorandum Opinion of this Court. Respondent has presented substantive evidence concerning the value of the land in question. The individual whose opinion formed the basis for respondent's determination testified concerning the method by which he valued the land and his opinion as to that value. We note the improbability of the overstatement of amounts properly allocable to land resulting in an excessive depletion deduction in the amount of exactly $ 50,000 per year for each of the years in question. However, such improbability alone is insufficient to strip the presumption of correctness from respondent's *44 determination where, as here, respondent presents substantive evidence in support of his determination. This is not one of those rare occasions where this Court will look behind a notice of deficiency to examine the evidence used or the propriety of the Commissioner's procedure in making the determination. See Greenberg's Express, Inc. v. Commissioner,62 T.C. 324 (1974). Nor has petitioner established that respondent's determination is wholly without foundation. The taxable years at issue are not the only years over which the parties have disagreed concerning the correct amount of Federal income taxes owed by petitioner. In a settlement agreement concerning prior taxable years respondent agreed to an allocation to land which comports with the allocations on the Form T's filed for the years at issue. Petitioner argues that respondent has failed to prove that the value of land increased in value from the prior years to the years in question. We find this argument wholly without merit. Land acquired by petitioner during prior taxable years is not at issue here and amounts allocated to the cost of such land in settlement agreements have no relevance to the determination of the *45 proper amount to be allocated to land acquired during 1971, 1972, and 1973. Moreover, the acceptance of such prior allocations of value does not serve to bind respondent for the years here in controversy. Meneguzzo v. Commissioner,43 T.C. 824 (1965). Petitioner next argues that if the burden of proof concerning the value of the timberland in question is to be borne by it, it has met that burden by presenting evidence sufficient to prove the value of the land. We cannot agree. Petitioner asserts on brief that timberland valuations made by the Oregon Department of Revenue each year for property tax purposes formed the basis for the allocation of value to the timberland as reported by petitioner on the Form T's filed for the years in question. On brief petitioner explains, in general terms, the method by which the Oregon Department of Revenue values timberland and states that adjustments were made by petitioner to the values shown on the Oregon Department of Revenue schedules to reflect the character and quality of each of its tracts of land. Petitioner submitted an exhibit containing standardized schedules of land values for eight general classes of forest land as determined by *46 the Oregon Department of Revenue for each of the counties in which petitioner had timberland during the years in question. Petitioner also presented the Form T's filed for the years in question which contain petitioner's ultimate determinations of the value of the land. Without substantive evidence of the basis for property tax value assessments such assessments are generally of limited utility in valuing land. See Emmet v. Commissioner,11 T.C. 90 (1948). However, even if such assessments are viewed as a solid foundation upon which to base a determination of the value of the timberland, we find that petitioner has not demonstrated the method by which the timberland here in question was valued. Petitioner did not present specific evidence of how its land was classified to conform with the eight classes of timberland utilized by the Oregon Department of Revenue nor did it submit proof of the actual adjustments it made to the standardized values fixed by the Oregon Department of Revenue. In effect, petitioner requests that we determine that the land values reported on the Form T's are correct without providing evidence of how those values were arrived at. We are therefore unable *47 to find from the present record that petitioner had carried its burden of proving that respondent's determination of values is erroneous. Welch v. Helvering,supra,Rule 142(a), Tax Court Rules of Practice and Procedure. Accordingly, we hold for respondent on this issue. Decisions will be entered under Rule 155.
Footnotes
1. Cases of the following petitioners are consolidated herewith: Willamette Industries, Inc., docket No. 5083-76; Hunt Lumber Company, Inc., Transferor, Willamette Industries, Inc., Transferee, docket No. 5096-76; Brooks-Willamette Corporation, docket No. 5097-76; Wilmar Plywood, Inc., Transferor, Willamette Industries, Inc., Transferee, docket No. 5098-76.↩
*. By order of the Chief Judge dated June 30, 1980, these consolidated cases were reassigned from Judge William H. Quealy to Judge Sheldon V. Ekman↩.
1a. Due to concessions by the parties all issues in Docket No. 5097-76 have been settled.
2. For the taxable years ended December 31, 1971, 1972, and 1973, Willamette's consolidated returns also included the income of its subsidiaries Western Kraft Corp., Western Kraft East, Inc., Santiam Southern Co., Wimer Logging Co., Willamette National Lumber Co., Wimer Trucking Co., and Duraflake South, Inc.; its consolidated income tax return for the year 1971 also included the income of its subsidiary Western Corrugated, Inc.; its consolidated income tax return for the years 1971 and 1972 also included the income of its subsidiary Rebmit, Inc.; and its consolidated income tax return for the year 1973 also included the income of its subsidiaries Hunt Lumber Co., Inc., and Louisiana Plywood Corp.
3. MBF denotes a unit of measurement describing one thousand board feet of timber. The volumes shown are computed using the Modified Doyle scale.↩
*. Respondent has not determined a fair market value as of the indicated date for this timber which was harvested by Hunt Lumber Co., Inc. and Wilmar Plywood, Inc.↩
*. Respondent has not determined a fair market value as of the indicated date for this timber which was harvested by Hunt Lumber Co., Inc. and Wilmar Plywood, Inc.
4. For a discussion of the procedure followed by the USFS in selling timber see Ellingson Timber Co. v. Commissioner,T.C. Memo 1977-197↩.
5. Sec. 631(ae provides in part: (a) Election to Consider Cutting as Sale or Exchange.--If the taxpayer so elects on his return for a taxable year, the cutting of timber (for sale or for use in the taxpayer's trade or business) during such year by the taxpayer who owns, or has a contract right to cut, such timber (providing he has owned such timber or has held such contract right for a period of more than 6 months before the beginning of such year) shall be considered as a sale or exchange of such timber cut during such year. If such election has been made, gain or loss to the taxpayer shall be recognized in an amount equal to the difference between the fair market value of such timber, and the adjusted basis for depletion of such timber in the hands of the taxpayer. Such fair market value shall be the fair market value as of the first day of the taxable year in which such timber is cut, and shall thereafter be considered as the cost of such cut timber to the taxpayer for all purposes for which such cost is a necessary factor. * * *
6. This case required two weeks of trial, and produced 1,000 pages of transcript, and over 500 pages of briefs, exclusive of documentary exhibits.
7. Sec. 611(a) provides in pertinent part: (a) General Rule.--In the case of mines, oil and gas wells, other natural deposits, and timber, there shall be allowed as a deduction in computing taxable income a reasonable allowance for depletion and for depreciation of improvements, according to the peculiar conditions in each case; such reasonable allowance in all cases to be made under regulations prescribed by the Secretary. * * *↩
8. 67 T.C. 672 (1977), revd. 596 F.2d 358↩ (9th Cir. 1979).
9. Consequently, the rule of Golsen v. Commissioner,54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971), cert. denied 404 U.S. 940↩ (1971), has no application herein.